**UNITED STATES of America,**
**Appellee,**

v.

**Alex KORMAN, Defendant–Appellant.**

**Docket No. 00–1620.**

United States Court of Appeals,
Second Circuit.

June 19, 2001.

B. Alan Seidler, Nyack, NY, for appellant.

David Raymond Lewis, Ass't U.S. Att'y, SDNY, N.Y., NY, for appellee.

Present VAN GRAAFEILAND, KEARSE, Circuit Judges, and SEYBERT, District Judge.*.

*SUMMARY ORDER*

This cause came on to be heard on the record from the United States District Court for the Southern District of New York, and was argued by counsel.

ON CONSIDERATION WHEREOF, it is now hereby ordered, adjudged, and decreed that the judgment of said District Court be and it hereby is affirmed.

Defendant Alex Korman appeals from a judgment entered in the United States District Court for the Southern District of New York following his plea of guilty before Thomas P. Griesa, *Judge,* convicting him of wire fraud, in violation of 18 U.S.C. § 1343; conspiracy to commit wire fraud and to falsify the books and records of a registered broker-dealer of securities, in violation of 18 U.S.C. § 371; interstate

---

* Honorable Joanna Seybert, of the United States District Court for the Eastern District of New York, sitting by designation.

transportation of stolen property, in violation of 18 U.S.C. § 2314; laundering money instruments, in violation of 18 U.S.C. § 1957(A)(1)(b); conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h); and engaging in monetary transactions in property derived from specified unlawful activity, to wit, a fraudulent scheme to defraud a brokerage house, in violation of 18 U.S.C. § 1957(a). Korman was sentenced principally to 46 months' imprisonment, to be followed by a two-year term of supervised release, and was ordered to pay $1,280,000 in restitution. On appeal, Korman challenges the prison term imposed, contending (1) that the district court improperly applied § 2S1.1 of the Sentencing Guidelines ("Guidelines"), and grouped his money-laundering offenses separately from his fraud offenses, thereby increasing his Guidelines offense level, and (2) that the court should have granted him a downward departure on account of his physical condition. Finding no basis for reversal, we affirm.

In reviewing a sentence, we are required to accept a district court's factual findings unless they are clearly erroneous and to give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e) (1994). Korman's contention that § 2S1.1 was erroneously applied to him because the laundered funds did not conceal moneys derived from narcotics trafficking or organized crime is without merit. Application of that section is not limited to the proceeds of those crimes. *See generally United States v. Napoli,* 179 F.3d 1 (2d Cir.1999) (§ 2S1.1 applied to fraud scheme), *cert. denied,* 528 U.S. 1162, 120 S.Ct. 1176, 145 L.Ed.2d 1084 (2000); *see also United States v. Mustafa,* 238 F.3d 485, 496 (3d Cir.2001) ("a court's § 2S1.1 heartland analysis should address whether defendants engaged in money launder-

ing in which the laundered funds derived from serious underlying criminal conduct such as a significant drug trafficking operation or organized crime *or in typical money laundering in which a defendant knowingly conducted a financial transaction to conceal tainted funds* .... " (internal quotation marks omitted) (emphasis added)). Nor is it required that fraud offenses and money-laundering offenses be treated in a single group. *See, e.g., United States v. Napoli,* 179 F.3d at 7.

■ In the present case, two of Korman's coconspirators devised a scheme for obtaining moneys fraudulently. Thereafter, Korman was recruited to set up corporations-in names other than those of the coconspirators—solely for the purpose of receiving the fraudulently obtained moneys and then disbursing them to the scheme's participants in a disguised or untraceable form. The interposition of the corporations helped to conceal from the fraud victim the identities of the perpetrators of the fraudulent scheme and of the persons sharing in the proceeds. The district court found that "the design here was to handle this stolen money in such a way as to conceal what really happened to it, conceal the nature of the source of the funds so I am afraid I have got to apply the money laundering guidelines...." (Sentencing Transcript, Aug. 24, 2000.) We see no error in this characterization of the scheme, and we defer to the court's conclusion that the money-laundering guidelines were applicable to Korman's money-laundering offenses.

■ Korman's additional contention that the district court should have granted him a downward departure because of his physical condition is not properly before us. *See generally* Guidelines § 5K2.0 (policy statement) (departure permissible if

"there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.") The refusal to grant a departure is not reviewable on appeal except for an error of law, such as the court's mistaken belief that it lacks the power to depart. *See, e.g., United States v. Clark*, 128 F.3d 122, 124 (2d Cir.1997); *United States v. Haynes*, 985 F.2d 65, 68 (2d Cir.1993). Korman has not suggested that there was any such error here, and we see none. The court stated, "I do not find that the situation rises to the level which would permit me in any legal or proper exercise of discretion, in any legal manner or proper exercise of discretion to downwardly depart. . . ." The court having found that a downward departure was not warranted by the situation before it, its refusal to depart is unreviewable.

We have considered all of Korman's contentions that are properly before us and have found them to be without merit. The judgment of the district court is affirmed.