**Raymond GARCIA, Petitioner,**

v.

**UNITED STATES of America, Defendants.**

**No. 02 CIV. 4658RMBDFE.**

United States District Court, S.D. New York.

Nov. 27, 2002.

United States Atty., for Southern Dist. of New York.

Raymond Garcia, pro se.

## *ORDER*

BERMAN, District Judge.

### I. Introduction

On or about May 28, 2002, Petitioner Raymond Garcia ("Petitioner" or "Garcia"), appearing *pro se*, filed a petition to "vacate, set aside, or correct" his current sentence (in S1 00 Cr. 1138), pursuant to 28 U.S.C. § 2255 ("Petitioner's Motion").[1] Petitioner states, among other things, that his trial counsel "was ineffective for failing to file a timely Notice of Appeal" and "for failing to obtain Appellate review of the Sentencing Court's denial of a downward departure for diminish[ed] [c]apacity." Memorandum of Law in Support of Post Conviction Motion Pursuant to 28 U.S.C. § 2255 ("Petitioner's Memorandum"), at 2.

On or about September 11, 2002, United States Magistrate Judge Douglas F. Eaton, to whom this matter had been referred, issued a report and recommendation ("Report"), recommending that Petitioner's Motion be denied. Report at 1. The Magistrate concluded correctly that Petitioner's sentence was in accordance with applicable law, including the United States Sentencing Guidelines ("U.S.S.G."), and that Petitioner had waived his right to appeal or otherwise litigate his sentence in the Plea Agreement he signed on or about April 11, 2001 ("Plea Agreement"). *Id.* at 9.

The Report advised the parties that "[p]ursuant to 28 U.S.C. § 636(b)(1) and

---

**1.** 28 U.S.C. § 2255 relates, in part, to: "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ...."

Petitioner is currently serving a 151 month sentence imposed by this Court.

Rule 72(b) of the Federal Rules of Civil Procedure, any party may object to this recommendation within 10 business days after being served with a copy, i.e., by September 30, 2002, by filing written objections with the Clerk of the U.S. District Court ...." Report at 10. Neither party has filed objections to the Report. **For the reasons set forth below, the Report is adopted in its entirety.**

## II. Standard of Review

A district court evaluating a Magistrate's report may adopt those portions of the report to which no "specific, written objection" is made, as long as those sections are not clearly erroneous. Fed. R.Civ.P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Greene v. WCI Holdings Corp.*, 956 F.Supp. 509, 513 (S.D.N.Y.1997). "Where a party makes a 'specific written objection' within '[ten] days after being served with a copy of the [magistrate judge's] recommended disposition,' however, the district court is required to make a de novo determination regarding those parts of the report." *Cespedes v. Coughlin*, 956 F.Supp. 454, 463 (S.D.N.Y.1997) (quoting *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). A district judge may accept, reject, or modify, in whole or in part, the findings and recommendations of the Magistrate. *See DeLuca v. Lord*, 858 F.Supp. 1330, 1345 (S.D.N.Y.1994); *Walker v. Hood*, 679 F.Supp. 372, 374 (S.D.N.Y.1988). Where, as here, the petitioner is proceeding *pro se*, "leniency is generally accorded." *Bey v. Human Resources Admin.*, 1999 WL 31122, at *2 (E.D.N.Y. Jan.12 1999).

## III. Analysis

The facts as set forth in the Report are incorporated herein by reference.

Although no objections have been received, the Court has, in fact, conducted a *de novo* review of the Report, the underlying record herein, as well as appropriate legal authorities and finds that the Report is supported by the record, is in conformity with the law, and is not (clearly) erroneous. *See Pizarro v. Bartlett*, 776 F.Supp. 815, 817 (S.D.N.Y.1991).

### (i) Petitioner's Sentence

On April 11, 2001, Petitioner pled guilty to a one-count Superseding Information charging him with a violation of 21 U.S.C. §§ 812, 841(a) and 81(b)(1)(c), "in connection with his distribution, and possession with intent to distribute, of mixtures and substances containing a detectable amount of cocaine base on or about April 18, 2000." Plea Agreement at 1; April 11, 2001 Hearing Transcript ("4/11/01 Tr."), at 23–24. Based upon an offense level of 32 and a criminal history category IV and pursuant to U.S.S.G. § 6B1.4, Petitioner's sentencing guidelines range was calculated by the Court to be 151 to 188 months imprisonment. November 5, 2001 Hearing Transcript ("11/5/01 Tr.") at 19. The Government and Petitioner had "stipulated" to a sentencing guidelines range of 121 to 151 months in the Plea Agreement. The Plea Agreement also reserved Petitioner's right to move for a downward departure based upon "extraordinary rehabilitation pursuant to U.S.S.G. § 5K2.0." *Id.* at 4.[2]

### (ii) Downward Departure Application

At Petitioner's sentencing on November 11, 2001, Petitioner did, in fact, apply for a downward departure for "extraordinary rehabilitation." 11/5/01 Tr. at 8–11. The Government challenged the application, citing several incidents of post-plea misconduct by the Petitioner, including,

---

**2.** The Plea Agreement did not mention a de-

parture based upon "diminished capacity."

among other things, his fleeing from law enforcement officers and "leaving a pit bull in his wake standing guard." *Id.* at 13. Concluding that "under anybody's definition of the word 'rehabilitation,' there is a lot more that has to be accomplished," *id.* at 19, the Court found that Petitioner's behavior did not constitute extraordinary rehabilitation, because it included, among other things, testing positive for drugs "on more than one occasion," *id.* at 17, failing to attend required drug therapy sessions, *id.*, and evading and attempting to evade arrest. *Id.* at 18. The Court also considered other relevant factors and authorities (including Petitioner's mental and emotional state) and, in its discretion, denied a departure based upon the "totality of the circumstances." *Id.* at 16.[3] The Court stated that, although it took "very seriously into account Mr. Garcia's childhood, including his mother's addiction and the fact that he was raised in foster care and ... was incarcerated as a juvenile," *id.*, it would not exercise its discretion and depart from the guideline range because it found no "aggravating or mitigating circumstances of a kind or to a degree that are not adequately taken into consideration by the Sentencing Commission." *Id.* The Court imposed a sentence "co-incidental to both guideline ranges," i.e., the (Court calculated) guideline range and the stipulated range under the Plea Agreement. *Id.* at 19–20.

### (iii) Waiver

The Plea Agreement also contained a waiver of appeal rights as follows:

> (i) ... the defendant will neither appeal, nor otherwise litigate under Title 28, United States Code, Section 2255, any sentence within or below the stipulated

Sentencing Guidelines range set forth above (121 to 151 months) ... This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein.

Plea Agreement at 5.

On the date of Petitioner's plea, the Court asked Petitioner if he understood that the Plea Agreement contained a provision which barred him from challenging his sentence if the Court sentenced him within the stipulated guideline range:

> **The Court:** Mr. Garcia, there is a provision in [the Plea Agreement] that if I sentence you within the stipulated guideline range, namely, between 121 months and 151 months, that you give up your right to appeal in this case, do you realize that?
>
> **The Defendant:** Yes.
>
> **The Court:** You won't be able to challenge if I sentence you in that range of 121 to 151 months?
>
> **The Defendant:** Yes.

4/11/01 Tr. at 21. The Court also found that the Petitioner was "fully aware of the potential consequences that result from his waiving his appeal rights as reflected in the plea agreement dated April 10, 2001, and that he has done so voluntarily." *Id.* at 24.

### (iv) Diminished Capacity

Petitioner now seeks to challenge his sentence under 28 U.S.C. § 2255, alleging that his trial counsel was ineffective "for failing to obtain Appellate review of the Sentencing Court's denial of a downward departure for diminish[ed][c]apacity," *see* Petitioner's Memorandum at 2, although neither the Plea Agreement nor the PSI provided the basis for a downward depar-

---

**3.** The Court also considered the presentencing investigation report ("PSI"), dated August 30, 2001, which recommended a two-point offense level **increase** for obstruction of justice based on Petitioner's post-plea misconduct, *id.* at 11.

ture on the ground of diminished capacity. Report at 6 n. 1.

" 'Significantly reduced mental capacity' means the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." United States Sentencing Commission, *Guidelines Manual*, § 5K2.13 comment n. 1 (Nov.2002).[4] "Diminished capacity is an exception to the general rule that '[m]ental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable range.'" *Silleg*, 311 F.3d at 561 (quoting *United States v. Barton*, 76 F.3d 499, 502 (2d Cir.1996)). Nothing in the record supports the claim that Petitioner suffered from diminished capacity at the time of his crime or that diminished capacity in any way contributed to commission of the crime. *See Shaoul v. United States*, 104 F.3d 351, 1996 WL 626350, at *3 (2nd Cir. Oct.30, 1996); United States Sentencing Commission, *Guidelines Manual*, § 5K2.13 ("[a] sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity ... If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.").

## IV. Conclusion and Order

The Court incorporates Magistrate Eaton's Report by reference, and, for the reasons therein and herein, Petitioner's

Motion pursuant to 28 U.S.C. § 2255 is denied.

---

**4.** "[T]o establish diminished capacity a defendant must establish both 'reduced mental capacity and a causal link between that reduced capacity and the commission of the charged offense.'" *United States v. Silleg*, 311 F.3d 557, 561 (2nd Cir.2002) (quoting *United States v. Prescott*, 920 F.2d 139, 146 (2d Cir. 1990) (drug conspiracy)).